**UNITED STATES of America,
Appellee,**

v.

**Thomas F. QUINN, David Gennaro and Gary Seiden, Defendants-Appellants.**

**Nos. 635, 662, Dockets 35471, 35472.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 28, 1971.

Decided June 4, 1971.

Certiorari Denied Oct. 12, 1971.
See 92 S.Ct. 87.

See also, D.C., 314 F.Supp. 233.

---

Edmund Allen Rosner, New York City, for defendants-appellants Thomas Quinn and Gary Seiden.

Robert Kasanof, New York City, for defendant-appellant David Gennaro.

Daniel J. Sullivan, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., S. D. of New York, James W. Rayhill, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before WATERMAN, MOORE and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

Although the indictment contained 99 counts against 10 defendants, this appeal is taken by three defendants, Thomas F. Quinn (Quinn), David Gennaro (Gennaro) and Gary Seiden (Seiden) from judgments of conviction entered against them only as to a few of the counts. More specifically, Count I charged these three appellants, together with others, of conspiring to violate provisions of the Securities Act of 1933, the Securities Exchange Act of 1934 and the mail fraud statutes (15 U.S.C. §§ 77e(a), 77q(a), 77x, 78i(a) (2), 78ff(a) and 18 U.S.C. §§ 371, 1341 and 1343.[1]

---

1. 15 U.S.C. § 77e(a), part of the Securities Act of 1933, provides in part:
   "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—
   (1) to make use of any means * * * in interstate commerce * * * to sell such security * * * ; or
   (2) to carry or cause to be carried * * * in interstate commerce, * * * any such security for the purpose of sale or for delivery after sale."
   15 U.S.C. § 77q(a), also part of the Securities Act of 1933, provides in part:
   "It shall be unlawful for any person in the offer or sale of any securities by the use of * * * interstate commerce * * *—
   (1) to employ any device, scheme, or artifice to defraud, or
   (2) to obtain money * * * by means of any untrue statement of a material fact or any omission to state a material fact * * *, or
   (3) to engage in any transaction * * * which operates or would operate as a fraud or deceit upon the purchaser."
   15 U.S.C. § 77x, also part of the Securities Act of 1933, provides in part:
   "Any person who willfully violates any of the provisions of this subchapter * * * shall upon conviction be fined not more than $5,000 or imprisoned not more than five years, or both."
   15 U.S.C. § 78i(a), part of the Securities Exchange Act of 1934, provides in part:
   "It shall be unlawful for any person, * * * by the use of * * * interstate commerce * * *—
   (2) To effect * * * a series of transactions in any security registered on a national securities exchange [in this case the Salt Lake City Exchange] creating actual or apparent active trad-

Counts 10, 20 and 21 charged Gennaro and Quinn with three specific fraudulent stock sales; Counts 22, 23 and 24 charged Seiden and Quinn with three such sales; and Counts 57, 78 and 79 charged Seiden, Quinn and others with selling unregistered stock in three other transactions. Only these ten counts were sent to the jury. The jury after discriminating deliberation returned their verdicts as follows:

Count 1 (conspiracy): Seiden and Quinn convicted; Gennaro acquitted.

Counts 10, 20, 21 (specific stock sales): Quinn and Gennaro convicted.

Counts 22, 23, 24 (specific stock sales): Quinn and Seiden convicted.

Counts 57, 78, 79 (sale of unregistered stock: of the appellants, only Quinn and Seiden charged): Quinn convicted; Seiden convicted on 78, 79 and acquitted on 57.

The points relied upon for reversal by the respective appellants are so specific and limited that any resumé of the facts need only be stated in the light of these points. Any general statement of the highly complicated transactions, upon which the government bases its claims of fraud, would lead only to confusion.

The means by which Kent stock was manipulated and sold was described by some fifty witnesses whose collective testimony was more than adequate to support the fraudulent practices charges.

Quinn and Seiden limit their claims to (1) delay in bringing the indictment during which period allegedly key witnesses had died and (2) the alleged suppression by the prosecutor of the fact that a main government witness, J. Samuel Garrison, had been indicted in Florida during the New York trial. They do not dispute the weight of evidence.

Gennaro adopts these points but makes as his principal argument a claim of alleged error because the trial court failed to grant his motion for acquittal on the conspiracy count at the end of the government's case. Although acquitted by the jury on this count, Gennaro argues that the evidence improperly received against him on the conspiracy count prejudiced him before the jury on the substantive counts on which he was convicted.

*Pre-Indictment Delay*

The convictions of the appellants were based upon their participation in the sale of stock of Kent Industries, Inc. (Kent). In 1963 the Securities and Ex-

ing in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others."
15 U.S.C. § 78ff(a), also part of the Securities Exchange Act of 1934, provides in part:
"Any person who willfully violates any provision of this chapter * * * shall upon conviction be fined not more than $10,000, or imprisoned for not more than two years, or both * * *."
18 U.S.C. § 371 provides in part:
"If two or more persons conspire * * * to commit any offense against the United States, * * * each shall be fined not more than $10,000 or imprisoned not more than five years, or both."
18 U.S.C. § 1341, part of the mail fraud statute, provides in part:
"Whoever, having devised or intending to devise any scheme or artifice to de-

fraud * * * for the purpose of executing such scheme or artifice or attempting so to do * * * knowingly causes to be delivered by mail * * * any such matter or thing [whatever], shall be fined not more than $1,000 or imprisoned not more than five years, or both."
18 U.S.C. § 1343, also part of the mail fraud statute, provides in part:
"Whoever, having devised or intending to devise any scheme or artifice to defraud * * * transmits * * * by means of wire, radio, or television communication in interstate foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

change Commission (SEC) commenced an investigation of an over-the-counter broker-dealer, Thomas, Williams and Lee, Inc. (TWL) in connection with its sales of Kent stock to the public. Quinn was TWL's president, Gennaro was sales manager and a salesman, and Seiden was a salesman who also had certain accounting duties. The matter remained before the SEC until 1966. In January 1966 an SEC hearing examiner recommended that Quinn, Seiden and other TWL salesmen be barred from the securities business.

■ Investigation of possible criminal aspects of the Kent stock sales commenced in a government prosecutorial office in New York in the spring of 1966 and after further investigation an indictment was returned in May 1968, well within the period of the statute of limitations, the primary guarantor against pre-indictment delay. United States v. Ewell, 383 U.S. 116, 122, 86 S. Ct. 773, 15 L.Ed.2d 627 (1966); United States v. Feinberg, 383 F.2d 60 (2d Cir. 1967), cert. denied, 389 U.S. 1044, 88 S. Ct. 788, 19 L.Ed.2d 836 (1968). On the eve of the trial, defendants Quinn, Seiden and Parma moved to dismiss the indictment for want of a speedy trial. Although denying the motion, 314 F.Supp. 233, the trial court wisely withheld final judgment on this point and gave these defendants the opportunity to renew the motions upon the trial, thus enabling them to show prejudice from any unjustified delay. Dickey v. Florida, 398 U.S. 30, 38, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). The motions were renewed both upon the trial and at the time of sentencing. At these times the same trial judge had had ample opportunity, after a fairly lengthy trial and hearing the testimony of the many witnesses, to appraise the claims of prejudice. In their appellate arguments appellants rely principally on the death of three persons, Nicholas Marotta, a former president and large stockholder of TWL, Herbert Check, an accountant for TWL and Michael Lekocas, a stockholder in Kent. However, the offer of proof submitted by Quinn was directed largely to showing that in his actions he was influenced by Marotta, Lekocas and Check and that as a result of reliance "upon their representations [he] lacked any criminal intent." (Applts' Br., pp. 23–24.) In the light of the quasi-nebulous relevance of these witnesses' asserted testimony, the judgment of an experienced trial judge should be determinative as to whether the defendants were deprived of a fair trial. And parenthetically, it may be noted that neither Quinn nor Seiden thought enough of the Marotta, Lekocas, Check testimony in relation to the integrity of the Kent stock sales as to call them during the SEC investigation. The trial court's denial of the motions to dismiss because of alleged delay was proper.[2]

*Alleged Suppression of Evidence*

■ Appellants' claim that the prosecutor suppressed evidence is wholly lacking in merit as is demonstrated by the facts upon which it is based.

The government's first and according to appellants "one of its main," witnesses was J. Samuel Garrison, at one time president of Kent. The trial commenced on June 22, 1970. On June 23d, prior to Garrison's cross-examination in response to a request for criminal records of proposed government witnesses, the prosecutor (an Assistant United States Attorney for the Southern District of New York) stated that he knew that Garrison had no prior criminal convictions and that he (the Assistant) had no knowl-

2. There is no serious challenge with respect to the post-indictment period. Defendants were indicted on May 28, 1968, motions were decided on November 8, 1968 and trial took place on June 2, 1970 after a one month delay requested by defendant Quinn. Since no demand was made during the period between indictment and trial to advance the date of trial, appellants would fail in this respect even if the delay was excessive. United States v. Lustman, 258 F.2d 475, 477–478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958).

edge of any arrest record. The trial ended on July 6, 1970. On July 15, 1970 a news item appeared in the *New York Times* announcing that Garrison had been indicted in Florida on June 25, 1970 in connection with a $50 million dollar stock fraud. The indictment, however, had been sealed and was not made public until July 13, 1970. Calling this "newly discovered evidence" the defendants moved for a new trial. The motion was denied. Appellants do "not contend that the prosecutor knew of this indictment and wilfully failed to reveal it." Obviously, the very purpose of a "sealed" indictment is non-disclosure. However, appellants take the completely untenable position that "knowledge of any part of the government is equivalent to knowledge on the part of this prosecutor" and that "he [the New York prosecutor] must be deemed to have had constructive knowledge of this evidence" (Applts' Quinn and Seiden Br., pp. 8, 9). The Department of Justice alone has thousands of employees in the fifty States of the Union. Add to these many more thousands of employees of "any part of the government." Appellants' argument can be disposed of on a "reductio ad absurdum" basis. Moreover, the chronology of events refutes any knowledge of, or suppression by, the New York prosecutor of the Florida indictment: June 23 New York prosecutor's statement during trial; June 25 sealed indictment against Garrison returned in Florida; July 13 indictment unsealed in Florida; July 15 news disclosure in New York. The "suppression of evidence" cases cited by appellants[3] deal with facts known to the prosecution —not to facts concededly unknown.

*Gennaro*

Gennaro takes the position that it was error for the trial court to deny his motion for acquittal at the end of the government case. He must be referring to the conspiracy count only because he argues that this alleged failure prejudiced his right to a fair consideration by the jury of the substantive counts.

A detailed review of the evidence is unnecessary. The purpose of the conspiracy was the sale of Kent stock. The sale was accomplished through TWL whose moving spirit was Quinn. Gennar was a sales manager of TWL, shared an office with Quinn and was present in the office when Quinn was discussing the merchandising of Kent stock with Kaminske[4] and cash incentives to salesmen. With Quinn he fixed artificial prices for the stock and gave "pep" talks to salesmen concerning Kent stock. He knew of other questionable promotional operations and himself made sales. Three witnesses testified that they had purchased Kent stock through Gennaro. Both his representations and non-disclosures support the jury's conclusions on the substantive counts against him.

Even if Gennaro did not know that he and TWL were selling unregistered Kent stock and that there was manipulation therein on the Salt Lake Stock Exchange, knowledge of all phases of a conspiracy is not required. United States v. Crosby, 294 F.2d 928 (2d Cir. 1961), cert. denied, Mittleman v. United States, Pettit v. United States, Meredith v. United States, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962).

Lengthy argument was made by Gennaro's counsel at the close of the govern-

3. United States v. Bonanno, 430 F.2d 1060 (2d Cir.), cert. denied, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970); United States v. Polisi, 416 F.2d 573 (2d Cir. 1969); United States v. Miller, 411 F.2d 825 (2d Cir. 1969); Kyle v. United States, 297 F.2d 507 (2d Cir. 1961); United States v. Consolidated Laundries, 291 F.2d 563 (2d Cir. 1961).

4. Of course, it was not hearsay for Kaminske to testify that he had a conversation with Quinn relating to the conspiracy in the presence of this "blond" man. See United States v. Geaney, 417 F.2d 1116, 1120 n. 3 (2d Cir. 1969), cert. denied, Lynch v. United States, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970).

ment's case upon motions for judgment of acquittal on Counts 1, 10, 20 and 21 and to strike all alleged hearsay admitted subject to connection. The trial judge was thus faced with the problem presented in every multi-defendant criminal trial in which there is a conspiracy count. Of necessity testimony introduced against one defendant is bound to affect every other defendant. The human mind is not so compartmentalized as to be able to segregate the testimony and apply it only to a particular defendant as might a computer. The solution might be found in the abolition of all multi-defendant trials and conspiracy counts. It is significant that despite the constant recurrence of the problem, the courts and the legislatures have not adopted any such drastic changes. As long as the jury is to protect the rights and liberties of persons charged with crime, the method of jury instruction and the presumption that the jury will follow the court's instructions must remain as a safeguard that they will weigh the evidence as to each defendant and as to each count. Here there is rather tangible evidence that the jury functioned in a highly selective and carefully discriminatory manner. Gennaro was acquitted of conspiracy and convicted on the sales counts. The evidence was clearly sufficient as to the substantive counts and this, quite apart from any "spillover" effect of evidence against the others. Quinn and Seiden do not challenge the sufficiency of the proof as to the conspiracy or the substantive counts against them. And Seiden was acquitted on count 57 but Quinn was convicted thereon.

Gennaro's argument is, in substance, that he should have been acquitted by the court instead of by the jury. At the close of the government's case occurred the following colloquy:

"The Court: I want to ask Mr. Kasanof [Gennaro's counsel] how about without regard to a particular defendant, as to whether or not the overall evidence presented is sufficient to go to the jury on the conspiracy?

"Mr. Kasanof: Yes, sir, I believe it is. I would not say otherwise to your Honor."

The problem facing the trial judge at this point was discussed at length in United States v. Geaney, 417 F.2d 1116 (2d Cir. 1969), cert. denied, Lynch v. United States, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970). We have tried to comply with the standards set forth in *Geaney* and have every reason to believe that the trial judge found that there was sufficient independent evidence before him to justify the submission of Count 1 to the jury as to Gennaro.

Judgments affirmed.