**UNITED STATES of America, Appellee,**

v.

**Steven HYATT, Appellant.**

**No. 282, Docket 77–1294.**

United States Court of Appeals, Second Circuit.

Argued Oct. 14, 1977.

Decided Nov. 1, 1977.

Jonathan J. Silbermann, New York City (Martin Erdmann, The Legal Aid Society, Federal Defender Services Unit, New York City), for appellant.

Mark A. Summers, Asst. U.S. Atty. (David G. Trager, U.S. Atty. for the Eastern District of New York, Harvey M. Stone, Asst. U.S. Atty., of counsel), for appellee.

Before SMITH, MANSFIELD and OAKES, Circuit Judges.

SMITH, Circuit Judge:

Steven Hyatt appeals from a judgment of the United States District Court for the Eastern District of New York, Edward R. Neaher, Judge, convicting him, after a jury trial, of (1) five counts of publishing and uttering as true certain forged U.S. Treasury checks, in violation of 18 U.S.C. §§ 495 and 2,[1] and (2) ten counts of possession of U.S. Treasury checks stolen from the mails, in violation of 18 U.S.C. §§ 1708 and 2.[2]

Hyatt was sentenced to 18 months' imprisonment on each of the 15 counts, the sentences to run concurrently.

Hyatt raises three main issues on appeal:

(1) Whether trial court rulings precluded a fair opportunity to prepare and present a defense of entrapment;

(2) Whether evidence was insufficient to show that appellant "uttered" forged treasury checks;

(3) Whether the prosecutor's examination of witnesses was so prejudicial as to require reversal.

We find error as to the "uttering" counts and reverse as to those counts. We find no reversible error as to the "possession" counts and as to those counts affirm the judgment and sentence.

### The Facts

The government presented evidence indicating that in December, 1976, Postal Inspector Sydney Wilson was approached by an informant who arranged a "check buy" from appellant Hyatt. Wilson arranged to meet the informant and Hyatt at a restau-

---

1. 18 U.S.C. § 495 provides:

Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or

Whoever transmits to, or presents at any office or officer of the United States, any such writing in support of, or in relation to, any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited—

Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.
18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2. 18 U.S.C. § 1708 provides:

Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

rant in Queens, New York. After a preliminary discussion in Wilson's car, Hyatt left briefly, returning with ten U.S. Treasury checks made out to various payees. Five of the checks had forged endorsements, and five were unendorsed. Wilson offered to pay Hyatt 25% of the face value of the checks; Hyatt accepted this offer.

Wilson then left the car, presumably to obtain the cash, and signaled other government agents to arrest Hyatt. The agents also feigned the arrest of Wilson and the informant.

While in custody, Hyatt admitted receiving the checks from a man named "Bunny," who had requested that Hyatt deposit the checks in Hyatt's own bank account. He acknowledged in his trial testimony that he had seen several hundred similar checks at Bunny's apartment, and that he knew that many of these bore forged endorsements.

While acknowledging that he had sold treasury checks to Wilson, Hyatt testified that his arrest was a product of entrapment. He asserted that he had met the informant "Jimmy" at the home of a friend, and that Jimmy had asked him if he "did checks" or "could get checks." Hyatt told Jimmy that he was not interested. He testified further that Jimmy was not satisfied with this initial rebuff, but continued to pursue Hyatt both by visiting and telephoning him on numerous occasions.

Hyatt asserted that he took checks from "Bunny" solely in order to pass them on to Jimmy, that he might satisfy him. When Jimmy told Hyatt about the proposed "check buy" Hyatt protested, but finally agreed to go ahead with the deal only under duress.

At trial, the government called the payees of the treasury checks, some of whom testified that the checks were in payment for various physical and emotional disabilities, and that they had never been received.

Hyatt sought to introduce the testimony of the mother of his co-defendant [3] that she received several telephone calls from someone named "Jimmy" who said that he was looking for Hyatt. This testimony was rejected by the trial court as hearsay.

## Questions of Law

### I.

The appellant argues first that he was deprived of a fair trial when the trial court refused to compel pretrial disclosure of the informant's identity and whereabouts. He asserts further that he was prejudiced when the prosecutor interrupted his interview with the informant during a trial recess.

The requirement of pretrial disclosure of an informant's identity is set forth in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), which indicates that in deciding whether to compel disclosure by the government, the trial court must balance the competing interests of the defendant with those of the government.

Given the imprecision inherent in applying a balancing test of this kind, we recognize that trial courts must have considerable discretion in deciding when disclosure is appropriate. Where, as here, it is not clear before trial that an informant's testimony will be relevant and helpful to the defense or essential to a fair trial we cannot say, as a matter of law, that there has been an abuse of discretion on the part of the trial court. *Roviaro v. United States, supra,* 353 U.S. at 60–62, 77 S.Ct. 623.

Even if we ourselves might have been inclined to balance these interests in favor of the defendant from the beginning, the fact that the identity and perhaps the whereabouts of the informant were known to the appellant, coupled with the government's disclosure of the informant's identity at the conclusion of the appellant's direct testimony, cures any error which may have

---

**3.** The co-defendant, Linda Andre, became ill during the course of the trial and the prosecution was severed as to her.

been caused by the initial ruling in this matter. See *United States v. Fuentes*, 563 F.2d 527 (2d Cir. 1977); *United States v. Turbide*, 558 F.2d 1053 (2d Cir. 1977).

■ We are not unmindful of the then Assistant U.S. Attorney's improper behavior in unilaterally terminating Hyatt's interview with the informant. And we shall not tolerate the view that the government has some special right or privilege to control access to trial witnesses. *IBM Corporation v. Edelstein*, 526 F.2d 37, 41–44 (2d Cir. 1975). On reading the entire trial record, however, we find that in this case the prosecutor's actions were not so prejudicial as to require a reversal on this point. The appellant did have some time with the witness, and did not request more time when the matter was submitted to the court for a ruling. He did not object to the court's determination that nothing would be served by continuing the interview, and gave every indication that he had made a reasoned decision in choosing not to call the informant as a witness. Thus the prosecutor's attitude and actions, while objectionable, were not prejudicial in the context of this case.

## II.

■ Hyatt asserts that the district court's refusal to admit the testimony of one of his witnesses was improper. Hyatt wished to call the mother of his co-defendant, who was to testify that she received numerous telephone calls from someone identified as "Jimmy," who said that he was looking for Hyatt.

Whether this testimony is, as the district court thought, hearsay is somewhat unclear. If the statement in question is "I am Jimmy," the declarant is Jimmy, and the statement hearsay. If the statement in question is, "I received a telephone call from someone calling himself Jimmy," the declarant is the proposed witness, and the statement is not hearsay if used to prove only that some person telephoned the witness.

The difficulty for appellant's claim is that the statement was apparently being introduced to prove more than the receipt of a telephone call; it was being used to identify a *particular* "Jimmy." Thus even if not hearsay as to the witness, the statement comes within the authentication requirements of Rule 901 of the Federal Rules of Evidence, requirements which are not met, even circumstantially, in this case.[4] Accordingly, the district court's exclusion of this testimony was not error.[5]

## III.

■ Hyatt argues that the government's evidence was insufficient to prove that he had "uttered" the treasury checks, in violation of 18 U.S.C. § 495. This is because the commission of this crime entails that "there must be some attempt to circulate the check by means of a fraudulent representation that it is genuine." *United States v. Brown*, 495 F.2d 593, 597 n.4 (1st Cir.), *cert. denied*, 419 U.S. 965, 95 S.Ct. 226, 42 L.Ed.2d 179 (1974). Compare 2 *Wharton's Criminal Law and Procedure* § 650 (Anderson, ed. 1957). But in this case, argues Hyatt, Agent Wilson knew that the checks were not genuine, and Hyatt made no representation to the contrary, as required by the statute.

The government argues against this position that Hyatt either aided and abetted the "uttering" of forged checks, or, in the

---

4. It was not shown that appellant, who recognized the informant's voice from first-hand meetings, ever received any of the calls which were the subject of the proffered testimony, and it is acknowledged that the proposed witness was not acquainted with the informant. Further, there is no testimony that a third party overheard the informant make these calls. Thus the case does not come within the rule of *United States v. Fassoulis*, 445 F.2d 13, 17 (2d Cir.), *cert. denied*, 404 U.S. 858, 92 S.Ct. 110, 30

L.Ed.2d 100 (1971). It may be noted that in any case the government conceded on argument to the jury that the calls were in fact made.

5. Hyatt argues, in addition, that he was precluded from cross-examining government witnesses with respect to their prior relationships with the informant. This claim is not supported by the trial record. See testimony at 127, 161–66, 170–71, 263–64, 268.

alternative, that he conspired to do so. While superficially appealing, the government's theory cannot stand. To aid and abet the commission of a crime, there must be an actual crime committed. *United States v. Bernstein*, 533 F.2d 775, 799 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); *United States v. Cades*, 495 F.2d 1166 (3d Cir. 1974); *United States v. Jones*, 425 F.2d 1048, 1056 (9th Cir.), *cert. denied*, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970). But here there is no instance of uttering.

To conspire to commit a crime, there must be a prior agreement to commit that crime. *United States v. Rosner*, 485 F.2d 1213, 1229 (2d Cir.), *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1973). But here, the government agent never intended to "utter" the checks, and thus there never existed the requisite agreement. *United States v. Brown, supra,* and other cases cited by the government in support of its position are limited on their facts to conspiracies. But conspiracy between the agent and Hyatt, or alternatively between Hyatt and his co-defendant, was neither charged nor proved in this case.

Accordingly, we reverse the convictions with respect to the five counts of "uttering." [6]

## IV.

■ Finally, Hyatt asserts that the testimony elicited by the Assistant U.S. Attorney with respect to the disabilities suffered by payees of the stolen treasury checks was so prejudicial as to require reversal. While this line of questioning was both irrelevant to the proof at trial and prejudicial, we are not prepared to hold that it was sufficiently damaging, given the length of the trial and the relative paucity of offending material, to require reversal. This is not to indicate, however, that we condone this kind of be-

havior on the part of the prosecuting attorney. As an officer of the court, he is responsible for the fair and impartial exercise of his duties.

Reversed as to the uttering counts and affirmed as to the counts charging possession.

---

**6.** On argument to the jury Hyatt's counsel conceded that possession and uttering had been established, relying on the defense of entrapment. Only on appeal was the insufficiency of proof of technical "uttering" raised. Because of the absence of "undesirable collateral consequences" stemming from the counts reversed

here, and given the specific facts of this case, all the counts involving the same effort to dispose of the same stolen checks, we decline to remand the remaining valid counts for resentencing. See *McGee v. United States*, 462 F.2d 243 at 246 n. 5 (majority opinion) and 248–49 (Timbers, *J.,* dissenting) (2d Cir. 1972).