**UNITED STATES of America**

v.

**Mike NELSON.**

**Crim. No. 76–158–5.**

United States District Court,
M. D. Pennsylvania.

April 12, 1978.

---

**118**

Sal Cognetti, Jr., Asst. U. S. Atty., Scranton, Pa., for plaintiff.

Nino V. Tinari, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEALON, Chief Judge.

Defendant Mike Nelson, was one of twelve defendants indicted for conspiracy to import marijuana into the United States from Colombia, see 21 U.S.C. § 963, and aiding and abetting its importation. See 21 U.S.C. §§ 952(a) & 960; 18 U.S.C. § 2. Nine of the defendants entered pleas of guilty to the conspiracy count and, as a result of a plea agreement, the government dismissed the substantive count. Defend-

---

1. The twelfth defendant, Elizabeth Porto, is a fugitive.

2. Other grounds would seem to be suggested by defendant's motion, but these have not been

ants Nelson and Sal LaBate went to trial before a jury, which acquitted LaBate on both counts while acquitting defendant on the conspiracy count but finding him guilty on the substantive count.[1]

Defendant filed a post-trial motion for judgment of acquittal or, in the alternative, for a new trial. See Fed.R.Crim.P. 29 & 33. Pursuant to the order of the court dated February 22, 1977, defendant filed his supporting brief on March 9, 1978. The government's opposing brief was filed March 30, 1978, and the matter became ripe for a determination on April 6, 1978, when defendant opted not to file a reply brief. Presently before the court are the questions of: (1) whether there is evidence from which the jury could properly find defendant guilty of aiding and abetting; (2) whether the court's rulings on pretrial suppression motions were correct; and (3) whether defendant's acquittal on the conspiracy count precludes his conviction by the same jury of the substantive count of aiding and abetting.[2]

The government's evidence established that Derek Mettrick, a pilot, and Norman Bonner, a flight engineer, were recruited in Miami, Fla., to lease a DC-6 in Fort Lauderdale, Fla., and to fly it to the northern peninsula of Colombia, South America, where arrangements had been made to pick up a cargo of approximately six tons of marijuana to be transported to an airport in Mount Pocono, Pa. In the meantime, the Manager of the Mount Pocono Airport, Carl Nassauer, had agreed to allow the plane to land and to purchase fuel for the plane's return trip to Florida. Mettrick, Bonner, and Nassauer informed the United States Customs of the proposed flight and cooperated with the authorities throughout. On December 12, 1976, the DC-6 left Miami Airport with Mettrick, Bonner, and defendants Sadowsky and Tussell aboard, stopped at South Caicos, Bahamas, to refuel, and

mentioned in the supporting brief. I am satisfied that these other grounds would not be meritorious.

proceeded to a landing in Colombia where the cargo of marijuana was placed on board by South Americans under the direction of Elizabeth Porto. The plane then flew a course northward over the Atlantic Ocean, entering the airspace over the United States at Charleston, S.C. and continued to Mount Pocono Airport where it landed shortly after midnight on December 13. As the plane was being unloaded by Sadowsky and Tussell, together with other defendants Whalen, Massaro, Cutler, Nils Nelson, Powell, and Laurie, who were waiting at the airport, the group was surrounded and arrested by Customs Agents, Drug Enforcement Agents, and Pennsylvania State Police who were positioned around the airport perimeter.

While defendant Mike Nelson, also identified at the trial as Nick Nelson, was not on the scene at the time of the arrest, there was ample testimony showing that he had aided and abetted the other defendants in the importation. Mr. Nassauer testified that he was initially approached by Tussell and Nelson on November 3, 1976, and told they had planned a freight operation that was to be "a little illegal" and they needed fuel for the plane which they wanted to land in an obscure area of the airport. Tussell, in Nelson's presence, handed $1,000 in cash in Nassauer to obtain fuel and advised that "Nick is going to be around the area, he's going to be dropping in." The following day Tussell telephoned Nassauer and inquired about the fuel purchase, but Nassauer stated that he needed another $2,000. On November 6, Nelson arrived at the Mount Pocono Airport in a Cessna plane and delivered $1,900 to Nassauer. He was dressed in light clothes and said that he "just got out of a jet." This was consistent with the testimony of Mettrick, the pilot, who testified that he met that day with Nelson and defendants Tussell, Sadowsky, and Davis in an automobile in Miami. Mettrick stated that he told Nelson that he needed front money to lease the plane, to which Nelson responded that they had brought twenty-eight loads of marijuana in during the past seven years and never had to put up front money. Nevertheless, according to Mettrick, Nelson handed him a shopping bag which contained $20,000 in cash although Nelson had represented that it contained $30,000. From this amount Mettrick paid the lessor of the plane $2,400. On November 11, Nelson again appeared at the airport with two others and checked the fuel truck that Nassauer had provided.

■ The jury was instructed that "in order to aid and abet another to commit a crime, it is necessary that the accused willfully associate himself in some way with the criminal venture, and willfully participate in it as he would in something he wishes to bring about; that is to say, that he willfully seek by some act or omission of his to make the criminal venture succeed." The defendant Nelson aided and abetted this venture from the very beginning when he and Tussell made the initial overture to Nassauer. The payment of $1,900 to Nassauer for fuel and the delivery of $20,000 to Mettrick as front money to lease the plane graphically demonstrate his willful participation in the venture. Moreover, these were physical acts of assistance which stand apart from a conspiratorial agreement with others. Agreement is not an essential part of aiding and abetting; it is only necessary to find knowing participation. *United States v. Tierney*, 424 F.2d 643 (9th Cir.), cert. denied, 400 U.S. 850, 91 S.Ct. 53, 27 L.Ed.2d 87 (1970). Since there was sufficient evidence to support the conviction on aiding and abetting, the motion for judgment of acquittal, to the extent that it asserts that the government's evidence was insufficient to support the verdict, will be denied. *See United States v. Blair*, 456 F.2d 514, 517 (3d Cir. 1972); *United States v. Allard*, 240 F.2d 840 (3d Cir. 1957).

■ Defendant, in a related argument, contends that the jury's acquittal on the conspiracy count requires that the court enter a judgment of acquittal on aiding and abetting. As indicated by the discussion above, the jury could have concluded that there was no conspiracy to import marijuana or that defendant was not a member of the conspiracy but that defendant nevertheless aided and abetted the importation. *See Nye & Nissen v. United States*, 336 U.S. 613, 620, 69 S.Ct. 766, 93 L.Ed. 919 (1949);

*United States v. Weibold,* 507 F.2d 932 (8th Cir. 1974). Moreover, it is the prerogative of a jury to simultaneously return inconsistent verdicts. Inconsistent verdicts may result from compromise or leniency but are not subject to attack. *United States v. Wyatt,* 561 F.2d 1388, 1391 n. 5 (4th Cir. 1977); *United States v. Martorano,* 557 F.2d 1, 8–9 (1st Cir. 1977). *See also United States v. McCrane,* 527 F.2d 906, 912 (3d Cir. 1975) *cert. denied,* 426 U.S. 906, 96 S.Ct. 2227, 48 L.Ed.2d 831 (1976); *United States v. Zane,* 495 F.2d 683, 691–92 (2d Cir.) *cert. denied,* 419 U.S. 895, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974); *United States v. Principe,* 482 F.2d 60 (1st Cir. 1973); *United States v. Giuliano,* 348 F.2d 217, 220–21 (2d Cir.) *cert. denied sub nom., United States v. Prezioso,* 382 U.S. 939, 86 S.Ct. 390, 15 L.Ed.2d 349 (1965). As pointed out in *Martorano* and *Giuliano,* the principles of res judicata do not apply where there are verdicts on both counts by a single jury. *Compare Sealfon v. United States,* 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1958). The motion for judgment of acquittal will be denied.

For the reasons stated in my earlier memorandum and order, the pretrial suppression motions were properly denied. *See United States v. Tussell,* 441 F.Supp. 1092 (M.D.Pa.1977). The motion for a new trial will be denied.