UNITED STATES of America, Plaintiff-Appellee,

v.

Manuel Juan ALVAREZ, Defendant-Appellant.

No. 78–5783.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1980.

Rehearing En Banc Granted March 14, 1980.

Carl H. Lida, Mark L. Krasnow, Miami, Fla., for defendant-appellant.

Ralph N. Person, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY, RUBIN and HATCHETT, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Manuel Juan Alvarez was convicted of joining with three other persons in a conspiracy to import 110,000 pounds of marijuana from Colombia by air. The evidence against Alvarez, viewed in the light most favorable to the government, portrays him as an underling who loaded electrical appliances aboard a plane that was to fly from the United States to Colombia, and who had stated he would unload a cargo of marijuana upon its return. His attack on the sufficiency of the evidence to prove that a conspiracy existed or that he knowingly joined in it requires us to consider how much of the conspiratorial darkness must be illuminated to warrant a jury's determination that a specific defendant joined in a plot. We conclude that, while the evidence sufficed to show that Alvarez planned to assist others in one of the acts involved in consummating a criminal venture, it failed to show that he had joined in an agreement to violate the law, and we, therefore, reverse his conviction.

At the outset, we sum up the entirety of the evidence against Alvarez. The indictment named John Cifarelli, Genaro Mercia Cruz and Edward John Peterson as co-conspirators in a plan to import marijuana into the United States. Except for his joinder in the indictment, Alvarez is mentioned in only one other place in the indictment; it is charged as one of the overt acts that he together with Cifarelli and Cruz met two DEA agents at the Opa-Locka, Florida, airport. The indictment against Peterson was dismissed, Cifarelli pleaded guilty and Cruz was found guilty when tried jointly with Alvarez. There was ample evidence of a conspiracy between Cruz and Cifarelli to import marijuana into the United States.

Pursuant to arrangements with an undercover DEA agent, Cifarelli came to meet the agent at the Opa-Locka airport. Alvarez drove a pickup truck in which Cruz and Cifarelli were riding. The truck was loaded with some household appliances, including a washer and dryer; the DEA agent asked Cifarelli who Alvarez was and Cifarelli said

Alvarez "would be at the off-loading side in the United States." The agent then spoke to Alvarez in Spanish and asked him if he planned to be at the unloading site. Alvarez nodded his head, signifying "yes," smiled, and asked the DEA agent if he was going on the plane. The agent said he was. After the conversation, Alvarez unloaded the household appliances from the truck. The agent then spoke with Cruz, and, after Cruz outlined his plans for arrival of the plane and its unloading, all were arrested.

## I.

■ Society is not protected against miscreants if only those guilty of major roles in crime are prosecuted. Criminal ventures may be complex. The perpetrator of transgression may require help: before the crime to assist in planning it; during the course of his criminal activity to aid in executing it and in escaping from the scene; after the event is completed, to conceal him, or to assist him in avoiding detection or in concealing the loot or the evidence against him. Therefore, accessories to criminal acts were themselves considered criminals by the common law.

■ Federal statutes continue at least part of this pattern. Thus federal law makes it criminal to aid and abet another in a crime[1] although there is no general federal statute against attempts, criminal solicitation or accessorial participation before the crime.[2] Criminal responsibility for abetting a crime requires that a defendant " 'associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek *by his action* to make it succeed.' L. Hand, J., in *United States v. Peoni*, 2 Cir., 100 F.2d 401, 402." *Nye & Nissen v. United States*, 1949, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919, 925 (emphasis supplied). *United States v.*

*Trevino*, 5 Cir. 1977, 556 F.2d 1265. When an abettor is prosecuted, the threshold question is: how much does someone have to contribute to the crime of another in order to be accountable as an abettor?

■ Federal prosecutors have often sidestepped the necessity of seeking the answer to this question by charging defendants involved in crime with a different criminal offense, joinder in a conspiracy. The prosecution need not even charge any completed offense because the crime of conspiracy condemns the agreement itself, treating all participants equally. Conspiracy also "collapses the distinction between accessories and perpetrators" through the doctrine of conspiratorial complicity, which punishes conspirators as principals in any substantive offense committed in furtherance of the conspiracy, whether or not they directly participated in that offense. *See* G. Fletcher, Rethinking Criminal Law, § 8.8.1, at 674 (1978). *See, e. g., Pinkerton v. United States*, 1946, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489. Thus, if a conspiracy is charged, the prosecution need not analyze whether a defendant conspirator's actions would ordinarily be sufficient to create liability as an abettor of an offense; all that is necessary is proof that the defendant joined in an unlawful agreement.

■ By eliminating the distinction between perpetrators and accessories, criminalization of conspiracy eradicates commonlaw and theoretical methods of distinguishing the degree of liability of various participants in criminal enterprises. *See* G. Fletcher, *supra* at §§ 8.5–8.8. Those who supply the means of committing an offense—although those means may be available elsewhere—become as liable for the offense as those who actually commit it if they are viewed as participants in the con-

---

1.  18 U.S.C. § 2 provides:

    **§ 2.  Principals**
    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
    (b) Whoever willfully causes an act to be done which if directly performed by him or

    another would be an offense against the United States, is punishable as a principal.

2.  *See* National Commission on Reform of Federal Criminal Laws, Study Draft of a New Federal Criminal Code, §§ 1001 & 1003, comments at p. 62 & 64 (1970).

spiracy. Thus, conspiracy can be a powerful weapon for prosecuting accessories to crime.[3]

In the case before us the government has chosen the conspiracy indictment as the path to punishing Alvarez's planned com-

plicity in an unconsummated criminal act. Under the facts shown, we decline to affirm that use of the federal proscription of conspiracy.

■ The use of conspiracy as a device for prosecuting minor actors in criminal

---

**3.** "In a typical case," as Professor Fletcher points out, "the defendant knows of an illegal activity by a group of persons and nonetheless provides a service with knowledge that his service will facilitate the illegal activity." G. Fletcher, supra, § 8.8.1, at 674. This mutation of accessorial responsibility into conspiratorial connivance does not result simply from confusion, prosecutorial or jurisprudential. It is easier to prove the charge of conspiracy than to establish guilt of the familiar accessorial crimes.

To prove aiding and abetting may be difficult. There can be no abettor without a completed crime. *See Hendrix v. United States*, 5 Cir. 1964, 327 F.2d 971, 975; *United States v. Hyatt*, 2 Cir. 1977, 565 F.2d 229, 233. To prove the guilt of an accessory, the prosecution must prove that a crime has been committed. *Shuttlesworth v. Birmingham*, 1963, 373 U.S. 262, 83 S.Ct. 1130, 10 L.Ed.2d 335. When the justified intervention of law enforcement officers aborts the planned offense, there may be no way to prosecute anyone who proposed to join in committing it, mastermind or accessory, save by charging conspiracy.

Nor does the possibility of an attempt charge always provide a satisfactory alternate basis for prosecuting would-be accessories. Aside from the absence of a general federal statute against attempts, proof of an attempt, even in instances where statutory warrant exists, is difficult. It requires conduct that is a substantial step toward commission of a crime, usually the commencement of a crime by an act directly dangerous to interests protected by law. *See United States v. Oviedo*, 5 Cir. 1976, 525 F.2d 881; *United States v. Mandujano*, 5 Cir. 1974, 499 F.2d 370, *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812; *see also United States v. Jackson*, 2 Cir. 1977, 560 F.2d 112, *cert. denied* 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301.

Criminalization of conspiracy punishes the inchoate offense by prosecuting the agreement itself, separating and stigmatizing jointly planned criminal activity prior to its completion.

Moreover, there are practical reasons to charge a conspiracy even if a substantive crime has been committed. Indictment on both the planning and the consummation results in a multiplication of counts, and, as Professors LaFave and Scott sum it up, the conspiracy charge gives the prosecutor unique advantages and imposes a particularly heavy burden on the defendant. W. LaFave & A. Scott, Jr., Criminal

Law § 61 (1972). These prosecution-tilted aspects of the charge include:

the inherent vagueness of the crime itself; *id.; see* Harno, *Intent in Criminal Conspiracy*, 89 U.Pa.L.Rev. 624 (1941); *see also Krulewitch v. United States*, 1949, 336 U.S. 440, 445, 69 S.Ct. 716, 719, 93 L.Ed. 790, 795 (Jackson, J., concurring);

the ambit the conspiracy charge affords to introduce, on the basis of the co-conspirator exception, evidence that would otherwise be hearsay; Rule 801(d)(2)(E), Fed.R.Evid.;

the disposition of all courts, our own included, to admit circumstantial evidence on somewhat relaxed standards of relevance on the rationale that the clandestine nature of the crime makes it unprovable in any other fashion; *see, e. g., Blumenthal v. United States*, 1947, 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154, 168; *United States v. Partin*, 5 Cir. 1977, 552 F.2d 621, 634, *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189; *United States v. Harrell*, 5 Cir. 1970, 436 F.2d 606, 612 & n. 7, *appeal after remand*, 458 F.2d 655, *cert. denied*, 1972, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86; and

the utility of the additional count in possible plea bargaining, for, from the defense standpoint, it may be attractive to gain dismissal of substantive counts while pleading only to the conspiracy. On the other hand, the prosecution may willingly make such a plea bargain in the knowledge that the court may impose a sentence as long as it would likely impose on the substantive count or counts. (18 U.S.C. § 371 permits a five year sentence and $10,000 fine.)

In attempting to understand conspiracy's use as a means of prosecuting accessories, we do not depreciate the seriousness of the offense itself. As defined in federal law, a criminal conspiracy is an agreement to commit an offense against the United States. 18 U.S.C. § 371. It is established lore that combination to commit crimes is inherently more dangerous than the plan of one person alone. Concert of action makes criminal success more likely. Commitment to confederates may itself prevent a change of heart. *See United States v. Feola*, 1975, 420 U.S. 671, 693–94, 95 S.Ct. 1255, 1268, 43 L.Ed.2d 541. *See also* Comment, *The Role of Joint Endeavor in Establishing Conspiratorial Agreement*, 1979 Utah L.Rev. 133. Our recognition of the dangers to society inherent in group criminal schemes must not, however, obscure analysis of the crime.

dramas is limited by the fact that conspiracy itself is not primarily a means of assessing the culpability of criminal accessories; it is a separate substantive offense.[4] Its prohibition is directed not at its unlawful object, but at the process of agreeing to pursue that object. "Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act." *Iannelli v. United States*, 1975, 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616; *United States v. Conroy*, 5 Cir. 1979, 589 F.2d 1258, 1269, *cert. denied*, —— U.S. ——, 100 S.Ct. 60, 62 L.Ed.2d 40.[5] A defendant does not join a conspiracy merely by participating in a substantive offense, *see Pinkerton v. United States*, 1946, 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489; *United States v. Carlton*, 5 Cir. 1973, 475 F.2d 104, 106, *cert. denied*, 414 U.S. 842, 94 S.Ct. 100, 38 L.Ed.2d 80, or by associating with persons who are members of a conspiracy. *Panci v. United States*, 5 Cir. 1958, 256 F.2d 308, 312. It is hornbook law that the criminalization of conspiracy does not proscribe purely a mental state; the agreement itself is the criminal act, an act "in advancement of the intention which each of [the conspirators] has conceived in his mind." Lord Chelmford in Mulachy v. Regina, L.R. 3 Eng. & Ir.App. 306, 317 (1868) quoted in Harno, *Intent in Criminal Conspiracy*, 89 U.Pa.L.Rev. 625, 630 (1941). The conspirator must knowingly agree to join others in a concerted effort to bring about a common end. *United States v. Perez*, 5 Cir. 1973, 489 F.2d 51, 61, *cert. denied*, 1974, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664. These elements of the conspiratorial offense may of course be shown by circumstantial evidence.

In conspiracy, as in most criminal acts, intent is an element of the offense. Conspiracy is, however, more complex because it involves two elements of intent that shade into each other: each party must have intended to enter into the agreement and the schemers must have had a common intent to commit an unlawful act. *See* Harno, *supra*, 89 U.Pa.L.Rev. at 631. There often may be no practical purpose in distinguishing these two intentions, but, for the crime to be proved, there must be evidence sufficient to warrant belief beyond reasonable doubt that the defendant intentionally entered into an agreement to do an illegal act with the intention of consummating that act. *United States v. Suarez*, 5 Cir. 1979, 608 F.2d 584.

It is not enough that a defendant may have wittingly aided a criminal act or that he may have intended to do so in the future; to convict a defendant of conspiracy the government must demonstrate that the defendant agreed with others that together they would accomplish the unlawful object of the conspiracy. The indictment against Alvarez identifies the agreement as a plan to import marijuana. The intent to do an illegal act is embraced in the charge to violate the law *by importing marijuana*, but both the knowing agreement and the intent to import marijuana must be proved. We turn our attention first to the alleged agreement.

---

4. Civil-law countries have not developed a comparably broad doctrine of conspiracy. "European criminal codes frequently make concerted action a basis for aggravating the penalties for completed substantive crimes, but when no substantive offense has been completed, only certain types of conspiracies are proscribed—notably those directed against the security of the state, those involving many participants organized for the purpose of committing numerous crimes and those contemplating particularly serious offenses." Comment, Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920 (1959).

5. Some federal statutes condemn bare agreements to do unlawful acts as criminal, 21 U.S.C. § 846; but the general federal criminal conspiracy act requires proof both of an agreement and an overt act in furtherance of it. 18 U.S.C. § 371. The overt act need not, however, be criminal in nature or create any danger to the victim or society; it suffices if, however innocent, the act furthers the criminal venture. The essential prerequisite to the existence of a conspiracy is in any event an agreement between two or more persons. *Iannelli v. United States*, 1975, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616. *See* Comment, *The Role of Joint Endeavor in Establishing Conspiratorial Agreement*, 1979 Utah L.Rev. 133.

What people do is logical, albeit, circumstantial, evidence of what lies in their mind. Extending this somewhat, courts have also considered that a person's acts might create an inference concerning what he has agreed to do. Therefore, whether or not an overt act is a component of the offense as defined by statute, an agreement to join a criminal conspiracy may be inferred from the performance of acts that further its purpose. This evidentiary rule should not be permitted to obscure what it is admitted to prove, an agreement, for sans agreement there can be no conspiracy. Note, *Developments in the Law—Criminal Conspiracy*, 72 Harv.L.Rev. 920, 933 (1959). Therefore, even if a conspiracy between two parties is established, not every act of a third person that assists in the accomplishment of the objective of the conspiracy is a sufficient basis to demonstrate his concurrence in that agreement.

In the leading case of *United States v. Falcone*, 2 Cir. 1940, 109 F.2d 579, aff'd, 1940, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128, the Second Circuit held that jobbers and distributors of sugar did not become members of a conspiracy to distill illegal spirits by knowingly selling sugar, yeast and cans that were used to make the alcohol. Before the Supreme Court, the government conceded that conviction of conspiracy could not rest "on proof alone of knowingly supplying an illicit distiller, who is not conspiring with others. In such a case, as the Government concedes, the act of supplying or some other proof must import an agreement or concert of action between buyer and seller, which admittedly is not present here." 311 U.S. at 207, 61 S.Ct. at 205, 85 L.Ed. at 130. Instead the government contended that one who with knowledge of a conspiracy sells to a conspirator is himself guilty of the conspiracy. Finding that the evidence showed no more than knowledge of illicit use of the materials sold, the Supreme Court affirmed the Second Circuit's dismissal, saying "Those having no knowledge of the conspiracy are not conspirators . . .; and one who without more furnishes supplies to an illicit distiller is not guilty of conspiracy even though his sale may have furthered the object of a conspiracy to which the distiller was a party but of which the supplier had no knowledge." 311 U.S. at 210, 61 S.Ct. at 207, 85 L.Ed. at 132.

In the Court of Appeals opinion thus affirmed, Judge Learned Hand had, with characteristic style, placed a touchstone to mark the fundamental quality of the co-conspirator: "[H]e must in some sense promote their venture himself, make it his own, have a stake in its outcome." 109 F.2d at 581. Partnership in the profits of the criminal venture is not essential but the defendant must at least have demonstrated an intent "to further, promote and cooperate in" the illegal activity. *Direct Sales v. United States*, 1943, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674. In *Direct Sales* the inference both of the agreement and the intent to join in it were based on the facts that a controlled substance (not an article of free commerce) was being sold, high pressure sales methods were employed, the buyer's purchases were frequent, repeated and abnormal in size and the evidence showed systematic and prolonged cooperation with a physician to supply him with his stock in trade for illicit enterprise. This was sufficient to show that the seller had joined "both mind and hand" with the purchaser in a conspiracy. It also showed a "stake in the venture" which was not an essential element of proof, but was not irrelevant. A mere promise, however, to do some act that might assist an embryonic conspiracy in achieving its yet unconsummated criminal end does not of itself demonstrate beyond reasonable doubt that the promisor knows of the conspiracy and has agreed to join in it.

While "a conspiracy is seldom born of 'open covenants openly arrived at,'" *Lacaze v. United States*, 5 Cir. 1968, 391 F.2d 516, 520, there must be proof of a "*common* purpose *and* plan," (emphasis supplied), to prove that a defendant has joined in a conspiracy. *United States v. James*, 5 Cir. 1976, 528 F.2d 999, 1010–11, *cert. denied sub nom.*, 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326. It is not necessary to prove that the defendant knew either the entire scope or all the details of the scheme; it need be shown only that he knew its essen-

tial nature. *Blumenthal v. United States*, 1947, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154; *United States v. Musgrave*, 5 Cir. 1973, 483 F.2d 327, *cert. denied*, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315; *United States v. Quinn*, 2 Cir. 1971, 445 F.2d 940, *cert. denied*, 404 U.S. 850, 92 S.Ct. 87, 30 L.Ed.2d 90.

■ It is essential, nonetheless, that the prosecution show beyond reasonable doubt that the defendant had "the deliberate, knowing, specific intent to join the conspiracy." *United States v. Morado*, 5 Cir. 1972, 454 F.2d 167, 175, *cert. denied*, 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116. This must be shown by substantial evidence. *United States v. Malatesta*, 5 Cir. 1979 (en banc), 590 F.2d 1379, *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777, including evidence of some sort of agreement; an agreement understood by the defendant, to which he was a party and to which he meant to be a party. *United States v. Suarez*, 5 Cir. 1979, 608 F.2d 584. Thus, as we have recently summed up, "[t]o convict, the government must prove that there was an agreement to accomplish an illegal act. It is not enough for it merely to establish a climate of activity that reeks of something foul." *United States v. Wieschenberg*, 5 Cir. 1979, 604 F.2d 326, 331–32.

■ The evidence against Alvarez is insufficient to prove that he joined in an agreement to import marijuana. Obviously, there is no direct proof of his consent. Neither is there any proof of his performance of an act directly in furtherance of the scheme. What was proved, construed most favorably to the prosecution and thus most strongly against Alvarez, is his statement that he planned to perform an act subsequent to importation, unloading the plane. That this would have been a criminal act, if done, is indisputable, but it is insufficient to prove beyond reasonable doubt that he had joined in a conspiracy to import a prohibited substance.

To justify a conviction for conspiracy, there must be evidence that Alvarez agreed

to join in the unlawful plan. The evidence presented to the jury in this case permits that conclusion only by a long chain of compounded inferences: that Alvarez knew illegal activity was afoot; that Alvarez intended to unload illegal cargo upon the plane's return; that Alvarez, therefore, knew of an agreement between others to import the illegal cargo; and that, consequently, Alvarez must have joined that illegal agreement. There is direct proof only of Alvarez's intentions. That he knew the activity was criminal is a reasonable inference. The other two conclusions are logical non-sequiturs.

What Alvarez intended to do is culpable. But without more his statements are not punishable as conspiracy. It requires no imagination to construct a reasonable hypothesis of Alvarez's innocence of the charge against him. *United States v. Edwards*, 5 Cir. 1974, 488 F.2d 1154, 1157. He may demonstrably have striven to aid an uncompleted crime; he was not proved to be a conspirator. *Cf. United States v. Nelson*, M.D.Pa.1978, 451 F.Supp. 117, 119 *aff'd* 3 Cir. 1979, 593 F.2d 543 (acquittal on conspiracy count does not mandate acquittal on aiding and abetting count).

There is one other route, seldom used, by which to implicate an accessory in a conspiracy: it is to charge that he aided and abetted the conspiracy. *See* Comment, *Complicity in a Conspiracy as an Approach to Conspiratorial Liability*, 16 U.C.L.A.L.Rev. 155 (1968). That charge is not made here and patently could not be, for Alvarez actually did nothing to further the conspiracy whatever he may have planned to do in the future.[6]

When we consider all the evidence in the case, we find that, at most, the government proved that Alvarez was a menial who intended to lend his pickup truck and his strong back to a plot confected by the mind of others. The crime they planned was still-born and Alvarez's criminal disposition was never employed. Whatever his subjec-

---

6. For a discussion of the question whether to be guilty of aiding and abetting a conspiracy one must assist the conspirators in reaching an agreement or whether it suffices to do some act to help them attain its goals, *see* W. LaFave & A. Scott, Criminal Law § 61 at 463.

tive transgressions, he was not shown to have been a conspirator or to have adopted or joined in the scheme contrived by others.[7]

For these reasons, the judgment of conviction is REVERSED.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before COLEMAN, Chief Judge, BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON and THOMAS A. CLARK, Circuit Judges.

BY THE COURT:

A majority of the Judges in active service, on the Court's own motion, having determined to have this case reheard en banc,

IT IS ORDERED that this cause shall be reheard en banc by the Court en banc on briefs without oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

---

7. Sensing perhaps the weakness of its evidence, the government raised for the first time in oral argument the claim that Alvarez had waived his right to review of the trial judge's denial of his motion for a judgment of acquittal by failing to renew the motion at the close of all the evidence. Aside from the fact that the issue was raised so belatedly that we would not usually consider it, the argument appears to be based on failure to read the record, for at page 148 of the transcript, trial counsel for Alvarez, addressing the court said, "Therefore, we would move for a judgment of acquittal at the end of all of the evidence." This was after Alvarez had put on his defense, after Alvarez's counsel said he thought the government intended to put on witnesses in rebuttal, and after the court said, "I'll let you make your motion out of turn and consider them (sic) as having been renewed at the end of the government's case." (Obviously referring to the close of the evidence.)