**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jeffrey David HOWARD, Ricky Leroy Stanley, Derrick Smith, Samuel J. Cooper, Jr., Defendants–Appellants.**

**Nos. 89–5710, 89–5749.**

United States Court of Appeals, Eleventh Circuit.

Dec. 14, 1990.

As Amended Jan. 18, 1991.

---

Thomas F. Almon, Miami, Fla., for Howard.

Carlos Canet, Miami, Fla., for Stanley.

Glen J. Koch, Koch and Palomino, Miami, Fla., for Smith.

Gregory A. Prebish, Asst. Federal Public Defender, Kathleen Cooper, Miami, Fla., for Cooper.

Bruce Lowe, Linda Collins Hertz, Anne M. Hayes, Asst. U.S. Attys., Miami, Fla., for U.S.

Before CLARK and BIRCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

BIRCH, Circuit Judge:

This appeal involves interpretation of the federal kidnapping statute, 18 U.S.C. § 1201. Appellants Jeffrey D. Howard, Ricky L. Stanley, Samuel J. Cooper and Derrick Smith each attack the sufficiency of the evidence supporting their convictions for conspiracy to kidnap and attempted kidnapping. The appellants also claim that the district court erred by failing to instruct the jury on the nature of the confinement necessary to support a kidnapping conviction, and by failing to grant appellants' motions to compel election and/or consolidation of the charges contained in an allegedly multiplicitous indictment. Howard contests his conviction under 18 U.S.C. § 924(c) for carrying a firearm during the commission of a crime of violence; that conviction cannot stand if his convictions for the predicate kidnapping offenses are reversed for insufficient evidence.[1] Finally, Howard appeals the district court's application of the enhanced penalty provision of 18 U.S.C. § 924(e), the Armed Career Criminal Act, based upon his prior criminal history. After reviewing the record, we affirm in part and reverse in part.

## I. BACKGROUND

On September 15, 1988, Drug Enforcement Administration (DEA) Special Agent Craig Cleveland and a confidential informant met with defendants Ferdella Cooper and Frederick Miller[2] in Miami, Florida, at a restaurant near the Miami airport. The parties met to discuss a cocaine deal. After another meeting the next morning, Agent Cleveland, working undercover, agreed to purchase five kilograms of cocaine for approximately $90,000. The participants agreed to consummate the transaction that afternoon at a Holiday Inn near the airport.

Agent Cleveland returned to his room at the Holiday Inn while Ferdella Cooper, Samuel Cooper and Ricky Stanley met outside the hotel lobby. DEA surveillance agents also noticed Derrick Smith in a red Chevrolet Blazer, which was parked on the lot at the Holiday Inn; Samuel Cooper entered the Blazer after meeting with Ferdella Cooper and Stanley. Ferdella then telephoned Cleveland's room, and when Cleveland came to the lobby Ferdella introduced him to Stanley. Ferdella told Cleveland that Stanley had the cocaine, but Stanley asked to see Cleveland's money before the deal could be completed. Cleveland and Stanley walked to Cleveland's car, where Cleveland unlocked the trunk and showed Stanley $90,000 in "buy" money. Both men then returned to the hotel and waited for the Blazer to arrive with the cocaine.

---

1. Although Howard was the only appellant who briefed this argument, each appellant's initial brief expressly adopted all arguments raised by any co-defendant that could be applicable to him. Fed.R.App.P. 28(i). Howard's section 924(c) argument also pertains to Smith, because both men were acquitted of the drug charges contained in Count 1 of the superseding indictment; therefore, their section 924(c) convictions rest upon the sufficiency of the government's evidence on the attempted kidnapping and conspiracy to kidnap counts. Accordingly, the section 924(c) argument will be considered with respect to both Howard and Smith.

2. Ferdella Cooper and Frederick Miller were defendants in the district court action, but neither is involved in this appeal.

After a few minutes, Stanley told Samuel Cooper to get the Blazer, which had been moved to a Winn–Dixie supermarket parking lot across the street from the Holiday Inn. When Cooper did not return, Stanley left Cleveland to check on the delay. Shortly thereafter, the Blazer drove into the lot and parked next to Cleveland's undercover car, which held the "buy" money in the trunk. Stanley stepped out of the front passenger seat and told Cleveland that he wanted to make the exchange at the Blazer, but Cleveland asked to see the cocaine first.

Stanley pushed the Blazer's front seat forward and showed Cleveland a small brown bag in the back seat that allegedly contained the cocaine. The bag was stuffed with other plastic bags to appear full but was otherwise empty. When Cleveland leaned into the Blazer to get a better look at the bag, he saw Jeffrey Howard and Samuel Cooper in the back seat and Smith in the driver's seat. All three men held firearms which were later determined to be fully loaded.

At that moment, Stanley placed a gun in Cleveland's ribs, told him to get in the Blazer, and attempted to force him in when Cleveland resisted. Cleveland grabbed Stanley's gun by the barrel and pushed it down, then backed away, pulled his own gun, and yelled "Police!" When Stanley raised his gun and pointed it at Cleveland, the DEA agent fired at Stanley but missed. After Smith jumped out of the Blazer on the passenger side and raised his gun, Cleveland also fired at him. Cleveland fired a total of five rounds, with one bullet wounding Smith in the buttocks as he fled. The appellants were arrested by DEA agents while attempting to escape. Their weapons were recovered from the Blazer and the surrounding area. No cocaine was found in the Blazer or on the person of any appellant.

In December, 1988, a federal grand jury returned a sixteen-count superseding indictment ("indictment") against appellants. The indictment charged all appellants with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (Count 1); conspiracy to kidnap a Federal agent, 18 U.S.C. § 1201(a)(5) (Count 2); and attempted kidnapping of a Federal agent, 18 U.S.C. §§ 1201(a)(5), 1201(d), and 2 (Count 3). Counts 4 through 7 charged Cooper, Stanley, Howard, and Smith, respectively, with carrying a firearm during the commission of a drug trafficking crime or crime of violence, 18 U.S.C. § 924(c). Counts 8, 9, 11 and 12 charged the respective appellants under 18 U.S.C. § 111 for assault with a deadly weapon on Agent Cleveland, and Count 10 charged Stanley with the same crime against another DEA agent, Richard Conine. Finally, Counts 13 and 14 charged Cooper and Howard, respectively, with possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(a)(1)(B), and 924(e)(1); Counts 15 and 16 charged Stanley and Smith, respectively, with the same crime, 18 U.S.C. §§ 922(g)(1) and 924(a)(1)(B).

The district court severed Counts 1 through 12 from the remaining counts in January, 1989. The first jury trial began on January 10, 1989, and a verdict was announced on January 18. Counts 13 through 16 were tried on May 23, 1989, and a verdict was announced on May 24. The appellants were found guilty as follows: Cooper on Counts 1, 2, 3, 4 and 13; Stanley on Counts 1, 2, 3, 5, 9 and 15; Howard on Counts 2, 3, 6 and 14; and Smith on Counts 2, 3, 7 and 16.

## II. DISCUSSION

### A. *The Multiplicity Argument*

■ At trial, each appellant argued that the indictment was multiplicitous and moved to compel consolidation and/or election of charges. Their motions were denied by the trial judge, and appellants contend that such denial was error. We review the district court's decision for abuse of discretion. *United States v. Lach*, 874 F.2d 1543, 1548 (11th Cir.1989).

■ An indictment is multiplicitous if it charges a single offense in more than one count. *Ward v. United States*, 694 F.2d 654, 660–61 (11th Cir.1983). The test for multiplicity, articulated by the Supreme

Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), is "whether each provision requires proof of a fact which the other does not." *See also Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). Appellants claim the indictment improperly charged them, in separate counts, with several "crimes" that are merely part of a single course of conduct. Upon conviction, appellants also contend that they were subjected to multiple punishments for that single course of conduct. For the reasons that follow, these arguments are without merit.

■ If we examine the elements of each count charged against any appellant, this indictment passes scrutiny under the *Blockburger* test. For example, Stanley was convicted for conspiracy to distribute cocaine, conspiracy to kidnap Agent Cleveland, the attempted kidnapping of Agent Cleveland, carrying a firearm during the commission of a drug trafficking crime or crime of violence, assault with a deadly weapon on Agent Cleveland, and possession of a firearm by a convicted felon. He was also indicted for assault with a deadly weapon on Agent Conine, but that charge was later dropped.

The cocaine charge in Count 1 stands alone. The conspiracy to kidnap charge in Count 2 is different from the attempted kidnapping charge in Count 3 because conspiracy requires proof of an agreement between two or more people, while attempt does not; attempt requires proof that a substantial step has been taken towards completion of the crime, while conspiracy does not. *United States v. Corley*, 824 F.2d 931, 936 (11th Cir.1987); *United States v. Forbrich*, 758 F.2d 555, 557 (11th Cir.1985). Although conspiracy also requires proof of an overt act that furthers the criminal venture, the overt act may be otherwise innocuous and need not pose any danger to society or the intended victim of the conspiracy. *United States v. Alvarez*, 610 F.2d 1250, 1255 n. 5 (5th Cir.), *rev'd on other grounds*, 625 F.2d 1196 (5th Cir.1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). In con-trast, a "substantial step" towards a criminal attempt usually poses a direct threat to interests protected by law. *Id.*, 610 F.2d at 1254 n. 3.

The firearms charges may be distinguished similarly. In Count 5, Stanley was accused of *carrying* a firearm during the commission of the crimes enumerated in Counts 1, 2 and 3. In Counts 9 and 10, Stanley was accused of *using* that firearm to assault two DEA agents. Count 15 charged Stanley with possession of a firearm by a convicted felon. In other words, if Stanley participated in the "course of conduct" enumerated in Counts 1, 2 and 3, he would not be charged with Count 5 unless he carried a gun during those activities. Even if he carried a gun, he would not be charged with Counts 9 and 10 unless he used that gun to assault or intimidate Agents Cleveland and Conine. Finally, even if he did all of the above, Stanley would not be charged with Count 15 unless he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. The additional elements of proof required to convict under each count of the indictment refute appellants' multiplicity argument by satisfying the *Blockburger* test.

■ In a related argument, Cooper contends that the government's use of multiple sentence enhancement provisions in Counts 4 and 13 violates the constitutional prohibition against double jeopardy. Several circuits have held that 18 U.S.C. § 924(c), which is the basis for Counts 4 through 7, creates a distinct crime as opposed to a penalty enhancement. *See United States v. Dixon*, 558 F.2d 919, 921 (9th Cir.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 764 (1978); *United States v. Sudduth*, 457 F.2d 1198 (10th Cir.1972). Even if we construe section 924(c) as an enhancement provision, however, Cooper has not raised a valid argument.

"With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."

*Missouri v. Hunter*, 459 U.S. at 366, 103 S.Ct. at 678. Congress enacted section 924(c) to deter potential felons from using firearms in the commission of certain crimes; both the legislative history of that section and the prohibitive nature of the sentence enhancement indicate that the legislature realized its intent. *See United States v. Rawlings*, 821 F.2d 1543, 1545–46 (11th Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987). Similarly, the legislative history of the Armed Career Criminal Act, 18 U.S.C. § 924(e), demonstrates that Congress sought to punish career criminals with enhanced sentences for repeat offenders. *See United States v. Balascsak*, 873 F.2d 673 (3d Cir.1989). Cooper has not submitted any evidence to establish, or even suggest, that the statutes at issue are not an accurate reflection of Congressional intent. Accordingly, his double jeopardy claim is without merit.

### B. *The Federal Kidnapping Statute*

■ Appellants next challenge the sufficiency of the evidence supporting their convictions for conspiracy to kidnap and attempted kidnapping. We must review the evidence "in the light most favorable to the government, accepting all reasonable inferences and credibility choices that tend to support the jury's verdict." *United States v. Eley*, 723 F.2d 1522, 1525 (11th Cir.1984) (citing *United States v. Cardona*, 650 F.2d 54, 57 (5th Cir.1981)). It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, if a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Montes–Cardenas*, 746 F.2d 771, 778 (11th Cir.1984).

The federal kidnapping statute was amended in 1984 to include DEA officers and employees, acting within the scope of their employment, among the class of protected victims. 18 U.S.C. § 1201(a)(5). Before 1984, a kidnap victim had to be transported across state lines to provide a basis for federal jurisdiction over the offense.

The 1984 amendment, however, created a special class of government employees whose work-related seizure could be prosecuted under the federal statute. *See* 18 U.S.C. § 1114.

The introduction of section 1201(a)(5) has raised difficult questions, which must be considered here, regarding the nature of the kidnapping offense. Appellants contend that any detention of Agent Cleveland was merely incidental to the crime of attempted robbery, and therefore insufficient to support a conviction for conspiracy to kidnap or attempted kidnapping. The government responds that the convictions were proper because section 1201 expressly prohibits the appellants' conduct, regardless of the motivation for their actions. We conclude that the jury's verdict rests upon an impermissibly broad reading of the kidnapping statute, and therefore reverse the appellants' convictions on Counts 2 and 3.

Prior to 1984, the duration of the seizure or asportation was rarely, if ever, an issue in kidnapping cases brought pursuant to federal law. As noted above, the victim had to be transported across state lines to invoke the jurisdiction of the federal courts, and such movement necessarily involved a prolonged detention that left little doubt as to the felonious intentions of the defendant. By expanding the class of protected victims without otherwise revising the statute, however, Congress has forced the courts to analyze the statutory definition of kidnapping in the context of related criminal activities.

Section 1201(d) [18 U.S.C.] defines the punishment for anyone who "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person ..." [3] if the victim is a government officer or employee working in a protected position and the crime occurs while the victim is engaged in the performance of official duties. *See* 18 U.S.C. § 1114 (list of protected positions). The statute is written in the conjunctive: a defendant must seize,

---

**3.** 18 U.S.C. § 1201(a).

confine, inveigle, decoy, kidnap, abduct, or carry away his victim, *and* the victim must be held "for ransom or reward or otherwise."

A literal reading of those words arguably supports the government's position in this case. *See United States v. Taylor*, No. 88–5177 (4th Cir. Dec. 1, 1989) 891 F.2d 287 (table) (full text available on WESTLAW 1989 WL141659). The appellants concede that they attempted to confine Agent Cleveland in the Blazer, albeit briefly, for the purpose of taking his keys to steal the "buy" money locked in the trunk of his car. Most robberies, however, necessarily involve at least a momentary detention of the victim, and we cannot imagine that Congress intended to subject a robbery defendant to additional liability for kidnapping unless the detention was somehow excessive in relation to the underlying robbery. Neither the statute nor the legislative history of the 1984 amendment provides any indication of Congressional intent regarding the length or type of detention required to support a kidnapping charge. Accordingly, we must look to case law to fill in the blanks left by Congress.

The Supreme Court first considered the potential overbreadth of the federal kidnapping statute in *Chatwin v. United States*, 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198 (1946), by placing the law in its proper historical context. The Federal Kidnapping Act, originally codified at 18 U.S.C. § 408a, was passed in 1932 to close a dangerous loophole between state and federal law. At that time, marauding bands of kidnappers were preying upon the wealthy with ruthless abandon, seizing their victims for ransom while operating outside the reach of existing state laws. *Chatwin*, 326 U.S. at 462–63, 66 S.Ct. at 237. Knowing

that the authorities in the victim's home state were powerless once a hostage was transported across state lines, the criminals would kidnap their target in one state, then move quickly to the next.

The Congressional response made kidnapping a federal crime when the victim was removed from one state to another, and "[c]omprehensive language was used to cover every possible variety of kidnaping followed by interstate transportation." *Chatwin*, 326 U.S. at 463, 66 S.Ct. at 237. Nevertheless,

> the broadness of the statutory language does not permit us to tear the words out of their [historical] context.... Were we to sanction a careless concept of the crime of kidnaping or were we to disregard the background and setting of the Act the boundaries of potential liability would be lost in infinity.

*Chatwin*, 326 U.S. at 464, 66 S.Ct. at 237. Since 1946, state courts and an occasional federal court have struggled to interpret and enforce kidnapping laws, balancing a healthy respect for prosecutorial zeal against a recognition that "the broadness of the statutory language" requires an abundance of judicial discretion to limit its application to appropriate circumstances.[4]

The Third Circuit has articulated a four-part test to distinguish kidnapping from other offenses involving asportation or detention of the victim. *Government of Virgin Islands v. Berry*, 604 F.2d 221 (3d Cir.1979). The paucity of federal cases on the subject led the *Berry* court to survey state court opinions interpreting state kidnapping laws that were similar to the Virgin Islands statute at issue in *Berry* (which largely mirrored the language of 18 U.S.C. § 1201). *Id.* at 224. The Third Circuit concluded that

> despite the variance in terminology, four factors are central to each of these [state

---

4. *See* Model Penal Code § 212.1 comment 2, at 220 (1980) ("The central problem in the law of kidnapping is to restrict the drastic sanctions authorized for this offense to instances of misbehavior warranting such punishment"). The decisions in this area of the law are extremely fact-specific. Therefore, few cases have attempted to fashion any sort of general rule to distinguish kidnapping from a lesser offense. For examples of state court opinions interpreting state statutes and holding that a limited

confinement does not rise to the level of a kidnapping, *see Jackson v. State*, 436 So.2d 1101 (Fla.App. 4 Dist.1983); *People v. Daniels*, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969); *People v. Levy*, 15 N.Y.2d 159, 256 N.Y. S.2d 793, 204 N.E.2d 842 (1965). For cases recognizing the distinction but affirming a kidnapping conviction, *see Faison v. State*, 426 So.2d 963 (Fla.1983); *People v. Miles*, 23 N.Y.2d 527, 297 N.Y.S.2d 913, 245 N.E.2d 688 (1969).

court] approaches. Those factors are: (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Id.* at 227.

In the district court, our appellants argued that their conduct was not kidnapping under the *Berry* standard, which has not previously been adopted by this circuit. Howard also unsuccessfully requested a jury instruction based upon *Berry*. On appeal the government contends, among other things, that *Berry* is factually inapposite and should not be applied to the instant case; in the alternative, it claims that appellants' convictions are nonetheless justified under the *Berry* test. We disagree with both contentions.

The factual situation in *Berry* is admittedly distinguishable because the victim in *Berry*, a man named Morales, voluntarily accompanied the defendants on a short drive in their automobile after they promised to take him home. Instead, the defendants stopped at a local beach, forced Morales to leave the car, and proceeded to rob him; they also may have been guilty of assault and attempted extortion. *Id.* at 223, 227–28. However, "the degree of confinement to which Morales was subjected was no greater than that which is inherent in the commission of those crimes.... Necessarily implicit in both [robbery and assault] is some limited confinement or asportation." *Id.* at 228. Despite the factual dissimilarities, the *Berry* opinion is relevant because it recognizes the difference between kidnapping and lesser offenses and because it proposes a viable test to distinguish them.

■ Adopting the *Berry* test, we must apply it to the actions of these appellants, viewed in the light most favorable to the

government.[5] The first factor is the duration of the *planned* detention or asportation, which in the instant case is impossible to determine because the crime was not consummated. The government bore the burden of proof, however, and must therefore bear the weight of any uncertainty on this point. *See United States v. Hamblin*, 911 F.2d 551, 558 (11th Cir.1990). There is no evidence in the record that appellants intended to detain Agent Cleveland in the Blazer beyond the few seconds it would take to secure his car keys and collect the "buy" money from his trunk. Indeed, the proximity of the money that was the object of appellants' criminal affections suggests that they would have no reason to detain Agent Cleveland once they obtained it.

The second factor is whether the detention or asportation *would have* occurred during the commission of a separate offense. We find that the detention would have occurred during the attempted robbery of Agent Cleveland. The government argues in conclusory terms that the evidence did not prove an attempted robbery, but rather a conspiracy and attempt to kidnap "for the purpose of" robbery. Such verbal gymnastics beg the question: did appellants detain (or attempt to detain) Agent Cleveland while committing an indictable offense apart from kidnapping? *See Berry*, 604 F.2d at 227–28.

The third factor is whether the detention or asportation which *would have* occurred is inherent in the separate offense. As noted above, the crime of robbery almost invariably involves a brief detention of the victim, if only long enough for the robber to convey his criminal intentions and steal whatever valuables initially attracted his attention. The cases recognize, however, that such detention does not always rise to the level of a "true" kidnapping, *Chatwin v. United States*, 326 U.S. at 464, 66 S.Ct. at 237, and the government did not prove that appellants planned to hold Agent Cleveland after they stole his "buy" money.

Finally, we must determine whether the detention *would have* created a significant

---

**5.** The test must be slightly reworded from the *Berry* formulation to account for the inchoate nature of the offenses charged. We will delineate the changes.

danger to the victim independent of that posed by the separate offense. The government argues that Agent Cleveland could have been robbed of his keys and the money in the open parking lot, without being detained in the Blazer by four armed men. Although we acknowledge that Agent Cleveland would have been in less danger outside the Blazer than inside, we also recognize that these events occurred in the middle of the afternoon, in the parking lot of a Holiday Inn near a busy airport. The potential for unwanted attention from passersby was much greater if the robbery was committed in the open, so the detention could reasonably be considered inherent to the crime of attempted robbery under these facts.

We hold that the evidence does not support the jury's conclusion that appellants' unsuccessful attempt to detain Agent Cleveland constitutes a conspiracy to kidnap or an attempt to kidnap. While the government's theory of the case is not implausible, the jury verdicts on Counts 2 and 3 are necessarily based upon conjecture and inference due to the incomplete nature of the offenses charged. The record is simply devoid of evidence to support an inference that appellants would have detained Agent Cleveland after stealing his money, and the limited detention inherent in the crime of robbery does not rise to the level of a kidnapping in this case.[6]

■ Accordingly, we reverse the jury verdicts against all four appellants on Counts 2 and 3 for insufficient evidence. This decision moots any claimed errors resulting from the trial court's instructions to the jury on the kidnapping counts. Howard and Smith were also convicted under 18 U.S.C. § 924(c) for carrying a firearm during the commission of a crime of violence. Those convictions were predicated upon the kidnapping crimes enumerated in Counts 2 and 3, since both men were acquitted of the drug charges in Count 1.

Reversal of the kidnapping convictions mandates reversal of the section 924(c) charges against these appellants. *See United States v. Gironda*, 758 F.2d 1201, 1214 (7th Cir.), *cert. denied*, 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985).

## C. The Armed Career Criminal Act

■ Howard's only remaining conviction is on Count 14, for violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(1)(B), which led to imposition of a 15–year mandatory minimum sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "Act"). Howard does not appeal his conviction on Count 14, but argues that his three prior convictions should not trigger application of section 924(e) because they were based upon three burglaries allegedly committed on different dates but charged in one indictment.

In *United States v. Greene*, 810 F.2d 999 (11th Cir.1986), this court held that convictions on four counts of burglary charged in a single indictment constitute four separate convictions for purposes of the Act. Howard nonetheless urges us to reject *Greene* and adopt the Third Circuit's interpretation of the Act in *United States v. Balascsak*, 873 F.2d 673 (3rd Cir.1989). Howard contends that *Balascsak* contradicts our holding in *Greene* and supports his position on the section 924(e) issue. We disagree and affirm the conviction on Count 14.

In *Balascsak*, the defendant had three prior burglary convictions when he was indicted for possession of a firearm by a convicted felon under former 18 U.S.C. § 1202(a)(1), since recodified at 18 U.S.C. § 922(g). His three prior convictions led the government to seek a sentence enhancement under the Armed Career Criminal Act, formerly 18 U.S.C. § 1201. The Act presently provides for an enhanced sentence if a defendant has three previous convictions for "a violent felony or a serious drug offense, or both, *committed on occasions different from one*

---

6. The jury apparently recognized that kidnapping was the government's only theory in this case, but that did not prevent them from submitting a written question to the trial judge during deliberations. The note read as follows: "We have a question bearing on Counts II and III of the indictment. Are we empowered to find something different from the charge? Our question is can we find a conspiracy to rob without finding a conspiracy to seize?" The trial judge refused to answer the question and rested on his prior instructions; the jury subsequently found the defendants guilty on Counts 2 and 3.

*another...."* 18 U.S.C. § 924(e)(1) (emphasis added).[7]

Balascsak's first burglary conviction was entered in May of 1981, and he committed two more burglaries during the night of July 10–11, 1981. The first burglary occurred at approximately 10:45 p.m. on July 10, and the second occurred one block away "some time between 11:00 p.m. and 7:00 a.m. the next morning." *Balascsak*, 873 F.2d at 675. Balascsak apparently argued that his second and third burglaries produced only one "conviction" for purposes of the Act. *Id.* at 678. The Third Circuit reviewed the legislative history of the Act and determined that Congress intended to punish defendants whose third offense came after at least two prior convictions, so Balascsak did not qualify for an enhanced sentence because he "was not twice previously convicted when he committed the burglaries on July 10–11." *Id.* at 684.

After the 1988 amendment to section 924(e), the majority opinion in *Balascsak* is not entirely correct in its interpretation of the Act.[8] As amended, section 924(e) requires three previous convictions where the predicate offenses were "committed on occasions different from one another." The statute does not require separate indictments; the final conviction under section 922(g) must merely be preceded by three convictions for *crimes* that are temporally distinct. Therefore, our decision in *Greene* is still consonant with the law after the 1988 amendment. Moreover, we remain convinced that *Greene* correctly interpreted the Act as it existed before November 18, 1988 (the effective date of the 1988 amendment). The amendment only reinforced the continuing validity of that decision.

Howard states that his three prior convictions for burglary arose out of the same judicial proceeding but admits that "each of the burglaries allegedly occurred on different dates."[9] That admission was substantiated by his Pre-Sentence Report and discussed at his sentencing hearing. The record reflects three convictions, as required by section 924(e), before the final predicate conviction pursuant to 18 U.S.C. § 922(g)(1). Howard's sentence was therefore properly subject to enhancement under section 924(e) and is ·hereby affirmed.

In summary, all appellants' convictions are REVERSED on Counts 2 and 3. Howard and Smith's convictions are also REVERSED on Counts 6 and 7, respectively, and the convictions and sentences on all other counts are AFFIRMED.

---

7. The 1988 amendment to section 924(e)(1), Publ.L. 100–690, § 7056, inserted the phrase "committed on occasions different from one another," after "or both,". The *Balascsak* decision interpreted section 924(e)(1) as it existed *before* the effective date of the 1988 amendment.

8. We note that the concurring opinion filed by Judge Becker in *Balascsak* anticipated the 1988 amendment to section 924(e), arguing that "to qualify as triggering offenses for the enhanced penalty, the three previous convictions must each have arisen from separate criminal episodes, but need not be separated by intervening

convictions." *Balascsak*, 873 F.2d at 684. Judge Becker concurred in the result because he was unconvinced that the second and third burglaries were part of separate criminal episodes, since they occurred on the same night and could have been committed within fifteen minutes of each other. *Id.* at 684–85. The majority opinion noted that "[t]he judges who join in this opinion do not disagree with the alternative ground for reversal relied on by Judge Becker in his concurring opinion." *Id.* at 684.

9. Brief of.Appellant Jeffrey D. Howard at 22.